Arthur E. WELSHANS,
Plaintiff–Appellant,

v.

BOATMEN'S BANCSHARES, INC.,
Defendant–Respondent.

No. 62511.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 18, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 23, 1994.

Application to Transfer Denied
April 26, 1994.

---

490

Anderson, Gilbert & Garvin, Francis X. Duda, St. Louis, for plaintiff-appellant.

Lewis, Rice & Fingersh, Curtis C. Calloway, John J. Moellering, St. Louis, for defendant-respondent.

PUDLOWSKI, Judge.

Appellant, Arthur Welshans, brought an action alleging respondent, Boatmen's Bancshares, Inc., discharged him because of a perceived handicap in violation of § 213.055 RSMo 1986.[1] After a bench trial, the court entered judgment for the respondent. On appeal, appellant argues the trial court erred: 1) in entering judgment for respondent because the probative evidence demonstrated respondent discharged appellant because of a perceived handicap and there was evidence appellant's handicap was subject to accommodation; 2) in admitting and relying upon inadmissible and irrelevant evidence; and 3) to the extent the court found appellant's cause of action collaterally or judicially estopped. We affirm.

On April 27, 1987, appellant began working as a vice president in respondent's corporate investment department. Appellant's duties included, in part, measuring interest rate sensitivity, reviewing subsidiaries' balance sheets, recommending funding strategies, and development and implementation of an asset/liability computer model. Fred Byrne, a senior vice president, suggested to respondent that it hire appellant and he worked with appellant until June, 1987. Thomas Pahl, another vice president, subsequently served as appellant's supervisor until late September, 1987. Appellant spent approximately thirty to fifty percent of his time working on the computer model. He had recommended to Byrne that a computer model, developed by Morgan Stanley, be used for asset/liability management. In late September, 1987, respondent hired James Brickley as chief investment officer. In this position, Brickley directed the activities of the investment department.

Appellant began experiencing headaches on September 27, 1987, and four days later was admitted to the hospital. He was diagnosed as suffering from a cerebral aneurysm, and Dr. William Coxe, a neurosurgeon, performed a bifrontal craniotomy on October 5, 1987. After the surgery, appellant exhibited confusion and severe memory loss. Sometime in October and after the surgery, Brickley visited appellant at the hospital. During this visit, appellant made certain remarks which indicated he was confused about his condition. The same or following day Brickley allegedly told Pahl "he's [referring to appellant] never going to make it back here."[2]

Dr. Bruce Crosson, a neuropsychologist, evaluated appellant in early November, 1987. Dr. Crosson served as the director of the Head Injury Resource Center for the Irene Walter Johnson Rehabilitation Institute (Institute). Dr. Crosson found appellant's memory deficit so severe that he could only orient to person but not to place and time. Appellant could recall he had an aneurysm and operation, but was confused regarding where and when these events occurred.

Appellant was discharged from the hospital on November 20, 1987, and began treatment as an outpatient at the Institute. His treatment included, in part, occupational therapy and learning compensation techniques for his diminished memory. In January, 1988, he applied for long-term disability benefits pursuant to respondent's insurance plan. Appellant received these benefits through the time of trial.

Dr. Crosson evaluated appellant again in late January, 1988. According to Dr. Crosson, appellant still suffered from a gross

---

1. All statutory references are to RSMo 1986 unless otherwise indicated.

2. It is disputed whether Brickley stated "back" or "back here."

memory impairment, difficulties in problem solving, and some subtle signs of frontal lobe dysfunction. In March, 1988, the Institute's staff evaluated appellant for possible participation in a comprehensive day treatment program. As part of the evaluation, Diane Werts, a vocational rehabilitation counselor, discussed with appellant his previous job duties. The staff prepared reports which indicated that appellant still suffered from memory problems.

On April 20, 1988, Dr. Crosson wrote Dr. Coxe summarizing the March evaluation. Dr. Crosson asserted that appellant's memory problems continued and were likely to cause appellant difficulty in his vocational functioning. Dr. Crosson also asserted that appellant's other difficulties included deficits in problem solving, visual intellectual functioning, impulsivity, and attention. Dr. Crosson expressed concern that appellant did not see his memory difficulties as a significant problem despite the fact he "remembers less than one quarter of what an average high school graduate would remember in long-term memory on testing." The Institute's staff believed appellant would benefit from the program but he declined to participate in any further treatment.

After leaving the hospital, appellant continued to be treated by Dr. Coxe. On April 16, 1988, Dr. Coxe examined appellant primarily for the purpose of determining if appellant could return to work. Ten days later, appellant notified Patti Dower, an employee in respondent's human resources department, that he would be medically released to return to work as of May 2, 1988. Dower then called Brickley who stated that appellant's position had been eliminated. Brickley also stated there was an open position, but he did not feel appellant was qualified to fill it. At appellant's request, Dr. Coxe sent a letter to Dower on May 12, 1988. In this letter, Dr. Coxe approved appellant's return to work provided appellant discussed his memory problems with respondent. Dr. Coxe also wrote that the Institute's staff was concerned about appellant's memory problems.

In late May, 1988, appellant met with Brickley and was informed that his job no longer existed. The investment department had been restructured under Brickley's direction. At some point Brickley had decided not to use the Morgan Stanley computer model but when this occurred is disputed by the parties. Appellant also met with John Wells, a senior vice president in respondent's human resources department, to ascertain whether there were any jobs available outside the investment department. Appellant never told anyone that he had any memory problems or required any accommodation to perform his job. On June 7, 1988, Wells wrote appellant informing him there were no suitable job openings at that time. Wells also asserted that appellant's long-term disability benefits would cease because Dr. Coxe had released appellant to return to work. On July 1, 1988, Dr. Coxe wrote respondent stating that the May 12th letter was not intended as an "unqualified release to return to work" or that appellant had recovered, but rather that appellant could return to work only with the advice and consent of respondent. Appellant's benefits were not interrupted. Respondent formally terminated appellant on September 25, 1988.

In January, 1988, appellant had applied for Social Security disability benefits. Appellant certified in October, 1988 he was unable to work because of his memory problems. The Social Security Administration contracted with Dr. F. Timothy Leonberger, a neuropsychologist, to evaluate appellant. Dr. Leonberger evaluated appellant on November 17, 1988, and in a subsequent report stated appellant demonstrated a "severe deficit in memory functioning" and that it was "very doubtful" whether appellant could return to his former career. The Social Security Administration initially denied benefits but an administrative law judge subsequently found appellant unable to perform his past relevant work and awarded benefits.

In December, 1988, appellant filed a claim with the Missouri Commission on Human Rights alleging respondent terminated him because of a perceived handicap. Appellant claimed he requested to return to work in April and May, 1988, had recovered from his aneurysm, and was able to perform his job duties. The Commission issued appellant a notice of right to sue on October 2, 1989.

Appellant filed his petition on December 29, 1989 within the statutory ninety day period as provided in § 213.111 RSMo Cum.Supp. 1992.

After a bench trial, the court entered findings of fact and conclusions of law. The trial court found appellant was the only person to assert he could perform his former job duties. The court did not find appellant credible on this issue. The court also found that while appellant was seeking and receiving long-term and Social Security disability benefits he repeatedly signed statements indicating he was unable to work. The court concluded that appellant failed to prove he had a protected handicap or that respondent's reason for appellant's discharge, the investment department's restructuring, was a pretext for handicap discrimination. The court subsequently concluded appellant failed to prove the necessary elements for a handicap discrimination action.

■ In a court tried case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. We defer to the trial court's resolution of witness credibility, Rule 73.-01(c)(2), and only consider those facts and inferences favorable to the prevailing party. *Heigert v. Londell Manor, Inc.*, 834 S.W.2d 858, 863 (Mo.App.E.D.1993).

■ It is an unlawful employment practice for an employer to discriminate against or discharge an employee because of a handicap. § 213.055. The essential elements of a prima facie case of handicap discrimination under § 213.055 are: 1) the plaintiff is a member of a protected class because he/she is handicapped under the act; 2) the plaintiff was discharged; and 3) there is evidence to infer that the handicap was a factor in the discharge. *Berkowski v. St. Louis County Board of Election Commissioners*, 854 S.W.2d 819, 826 (Mo.App.E.D.1993) (citing *City of Clayton v. Missouri Comm'n on Human Rights*, 821 S.W.2d 521, 527 (Mo.App. 1991)). Section 213.010(10) RSMo Cum. Supp.1992 defines handicap as "a physical or mental impairment which substantially limits one or more of a person's major life activi-ties, a condition perceived as such, or a record of having such impairment, which with or without reasonable accommodation does not interfere with performing the job...." The plaintiff bears the burden of establishing he/she is handicapped pursuant to the statutory definition. *Berkowski*, 854 S.W.2d at 826; *Umphries v. Jones*, 804 S.W.2d 38, 41 (Mo. App.1991). A person is not statutorily handicapped if the impairment interferes with performance of the job unless the person can perform the job with reasonable accommodation. *Id.* The question of reasonable accommodation is part of the test of whether a handicap exists. *Umphries*, 804 S.W.2d at 41. The plaintiff bears the burden of establishing the job could be performed with reasonable accommodation. *Berkowski*, 854 S.W.2d at 826; *Umphries*, 804 S.W.2d at 41.

■ In his first point, appellant argues the evidence demonstrated respondent's reasons for discharging appellant were pretextual and that appellant's impairment was subject to reasonable accommodation. Appellant contends that he should not bear the burden of establishing he was statutorily handicapped because respondent's proffered reason for the discharge, the investment department's restructuring, was unrelated to appellant's condition. Although respondent's stated reason for appellant's discharge was unrelated to appellant's condition, this does not alter the first element of appellant's prima facie case of handicap discrimination. Appellant bears the burden of establishing he was handicapped within the meaning of the statute. *Berkowski*, 854 S.W.2d at 826; *Rose City Oil Co. v. Missouri Comm'n on Human Rights*, 832 S.W.2d 314, 316 (Mo.App.E.D. 1992); *Umphries*, 804 S.W.2d at 41.

■ Appellant also contends that respondent's failure to permit appellant to return to work mandates that respondent bear the burden of establishing appellant's condition prevented him from performing his job. According to appellant, if an employer refuses to permit an employee to return to work it is impossible for that employee to subsequently prove his/her job could be performed with or without reasonable accommodation. We disagree. "Reasonable accommodation" is de-

fined and otherwise clarified in 8 C.S.R. 60–3.060(1)(G) which provides:

1. An employer shall make reasonable accommodation to the known limitations of a handicapped employee or applicant.

2. Accommodation may include:

A. Making facilities used by employees readily accessible to and usable by handicapped persons; and

B. Job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters and other similar actions; and

3. In determining whether an accommodation is reasonable, factors to be considered include but are not limited to:

A. The nature and cost of the accommodation needed;

B. The size and nature of a business, including the number and type of facilities and the structure and composition of the work force....

In *City of Clayton*, the defendant discharged plaintiff after receiving a doctor's note that plaintiff could not shovel snow because of a heart condition. The evidence established that the defendant could reasonably accommodate plaintiff's condition by permitting him to use a snow blower, a broom, or by modifying work schedules. We held there was competent and substantial evidence to support the Missouri Commission on Human Rights' finding that the defendant could reasonably accommodate plaintiff's handicap. *Id.* at 530–31. It is not impossible, as appellant contends, to prove a job can be performed with or without reasonable accommodation unless that person is permitted to return to work.

■ Appellant also contends the trial court erred in refusing to consider appellant's evidence of accommodation. In its conclusions, the court stated "the evidence established ... that plaintiff's [appellant's] impairment **would interfere,** with his performing his former job at Boatmen's [respondent]." The court also stated "plaintiff [appellant] never requested or indicated any kind of assistance or accommodation needed to enable him to do his job." It appears the

court considered whether appellant could perform his job without reasonable accommodation but not with reasonable accommodation.

"An employer shall make reasonable accommodation to **the known limitations** of a handicapped employee or applicant." 8 C.S.R. 60–3.060(1)(G)(1) (emphasis added). The relevant inquiry is whether appellant's condition was known by the respondent. This is not a case where the employee's condition would be readily apparent to the employer. The record reflects that appellant did not recognize the nature and degree of his condition. In late April, 1988, he informed respondent he was ready to return to work but never stated he had any memory problems or required accommodation. Respondent, however, received Dr. Coxe's May and July, 1988 letters which indicated that appellant still suffered from memory problems. Under these facts, his condition was known to the respondent and his failure to request reasonable accommodation does not require that appellant's evidence of accommodation be disregarded.

■ Appellant, however, still bears the burden of establishing he could perform the job with reasonable accommodation. *Berkowski*, 854 S.W.2d at 826; *Umphries*, 804 S.W.2d at 41. Appellant relies, in part, on the testimony of Dr. Leonberger. He testified that appellant could use calendars, computers, and some of the memory techniques he probably learned at the Institute. Dr. Leonberger also testified, however, there was "severe impairment" in appellant's memory and it was "very doubtful" he could return to his former career.

As part of the Institute's March, 1988 evaluation, Diane Werts discussed with appellant his job duties. In her report, Werts asserted that his deficits would "most certainly" affect his job performance. Werts stated that the "[a]mount of problem solving, decision making, integration of knowledge in need for learning new information would all be important components in · his previous position which had all been seriously affected by his injury." The reports of three other Institute staff members also indicate that appellant suffered from memory deficits and a lack of

awareness regarding these deficits. In his deposition testimony, Dr. Crosson asserted that even with accommodation appellant's difficulties with problem solving and memory would have interfered with the performance of his job. In his April 20, 1988 letter, Dr. Crosson wrote that when tested for long-term memory appellant remembered one quarter of what an average high school graduate would remember.

 Appellant testified that the second greatest threat to a commercial bank is related to the interest rates. Appellant's job duties included in part analyzing interest rate sensitivity and recommending funding strategies. In his April 20, 1988 letter, Dr. Crosson expressed concern that given the nature of appellant's job duties there could be serious repercussions for the errors that he would make. Dr. Crosson also stated that appellant stopped using many of the compensation techniques he had been taught. Accommodation is not reasonable if it imposes " 'undue financial and administrative burdens' " on the employer. *Umphries,* 804 S.W.2d at 41 (quoting *School Board of Nassau County, Florida v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987)).

 Appellant not only failed to satisfy his burden but the evidence clearly indicates that even with reasonable accommodation appellant could not perform his job. In reviewing a court-tried case, the appellate court is concerned with the correctness of the result, not the route taken to reach that result. *Reinecke v. Kleinheider,* 804 S.W.2d 838, 841 (Mo.App.1991). The trial court correctly concluded appellant failed to prove he had a protected handicap. Appellant's first point is denied.[3]

 Appellant argues in his second point that the trial court erred in admitting and relying upon the following "irrelevant and inadmissible" evidence: 1) Dr. Crosson's testimony and appellant's medical records from the Institute; 2) appellant's disability insurance records from respondent's insurance carrier; and 3) the administrative law judge's decision which found appellant totally disabled. In a court-tried case, it is difficult to predicate reversible error on the erroneous admission of evidence. *Fenlon v. Manchester Cab Co.,* 823 S.W.2d 104, 105 (Mo.App. 1991). Appellant bears the heavy burden of demonstrating a lack of competent evidence to support the trial court's judgment. *Id.*

 Appellant contends Dr. Crosson's testimony and the Institute's records are irrelevant because respondent did not consider this evidence when it discharged appellant. Evidence in the form of an offered fact is relevant if it tends to prove or disprove a fact in issue, or corroborates evidence which is relevant and bears on the principal issue. *Danneman v. Pickett,* 819 S.W.2d 770, 772 (Mo.App.1991). Dr. Crosson's testimony and the Institute's records are relevant to the issue of whether appellant was statutorily handicapped. The fact that respondent did not consider this evidence when it discharged appellant does not render the evidence inadmissible.

Dr. Crosson's testimony and the Institute's records, by itself, constitute competent evidence to support the trial court's judgment that appellant failed to prove he had a protected handicap. Accordingly, we need not address appellant's contentions regarding the insurance records or the administrative law judge's decision.

In his third point, appellant argues the trial court erred to the extent it found appellant's cause of action collaterally or judicially estopped. The trial court did not find appellant was either collaterally or judicially estopped from bringing the action and appellant's third point is therefore denied.

The trial court's judgment is affirmed.

SIMON, P.J., and GARY M. GAERTNER, C.J., concur.

---

**3.** There is also substantial evidence to support the trial court's conclusion that respondent's stated reason for the discharge was not pretextual.