Barbara MEAD, Appellant,

v.

**MISSOURI COMMISSION ON HUMAN RIGHTS and Kansas City Police Department, Respondents.**

No. WD 52200.

Missouri Court of Appeals, Western District.

Dec. 17, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 1997.

Application to Transfer Denied March 25, 1997.

Samuel McHenry, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert C. Cook, Asst. Atty. Gen., Jefferson City, for respondents.

SPINDEN, Judge.

The Kansas City Police Department (KCPD) denied Barbara Mead's application for employment as a dispatcher in August 1986 because she suffered asthma. Mead complained to the Missouri Commission on Human Rights (MCHR) that KCPD had unlawfully discriminated against her because of her asthma condition. MCHR concluded that KCPD had lawfully rejected Mead's application because her asthma created a reasonable probability of substantial harm to herself and to others. Mead sought the circuit court's review of MCHR's decision, and the circuit court affirmed the decision. Mead appeals. Although MCHR applied the wrong law to Mead's case, we reach the same result applying the correct legal analysis; hence, we affirm.

When Mead applied to be KCPD's 911 dispatcher, she agreed to a physical examination by a physician selected by KCPD.[1] Mead told the physician that she suffered asthma for which she took medicine. She supplied the physician with medical records which indicated that she had been hospitalized three times for treatment of asthma during the 20 months before applying for the dispatcher job, the last time occurring about two months before her application. Because of Mead's asthma, the physician decided that Mead was not qualified for the position, and KCPD decided not to employ her.

In this appeal, Mead complains that the circuit court erred in affirming MCHR's decision because it was not authorized by law and was contrary to MCHR's findings of fact. We disagree, for although MCHR applied the wrong law it reached the correct result.

Section 213.055.1(1)(a)[2] says, "It shall be an unlawful employment practice ... [f]or an employer, because of the ... handicap of any individual ... [t]o fail or refuse to hire ... any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment ... because of such individual's ... handicap[.]" Section 213.010(10) defines "handicap" as "a physical or mental impairment which substantially limits one or more of a person's major life activities, a condition perceived as such, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job[.]" The General Assembly has established a rather unusual scheme. It has declared in these statutes that, for purposes of determining whether an unlawful employment practice has occurred, a person is handicapped only if reasonable accommodations can be made to keep an impairment from interfering with a person's job performance. *Umphries v. Jones,* 804 S.W.2d 38, 41 (Mo.App.1991). If an employer cannot make such accommodation, the employee is not deemed handicapped and is not protected by the law.

For the purposes of this appeal, KCPD does not contest that Mead suffered an impairment which substantially limited her major life activities, that she was otherwise

---

1. The Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., has been interpreted to prohibit such examinations, but it had not been enacted at the time.

2. All statutory citations refer to the Missouri Revised Statutes of 1994.

qualified to be a 911 dispatcher, and that KCPD did not hire her only because of her asthma. KCPD contends that it established that Mead's handicap created a substantial risk of future harm to other persons; therefore, it was not obligated to accommodate her.

MCHR agreed with KCPD. On the basis of a federal case, *Mantolete v. Bolger,* 767 F.2d 1416 (9th Cir.1985), it concluded that an exception to the provisions of § 213.055.1 should be made for persons who, working in a particular position, present an unusual danger of injury to themselves or others. MCHR said:

In a few very limited situations, a job requirement that screens out or eliminates from consideration certain individuals with handicaps [3] is necessary.

. . . .

In order to exclude individuals with handicaps, there must be a showing of a reasonable probability of substantial harm, which is not based upon the employer's subjective evaluation. *Id.* ... Instead, the rule must be whether, considering the individual applicant's work history and medical history, employment of the individual would pose a reasonable probability of substantial harm.

MCHR concluded that KCPD had acted properly in concluding that Mead posed such a probability of harm.

MCHR misapplied the law. We find nothing in Chapter 213 which suggests that if an applicant for a job poses a reasonable probability of substantial harm to himself or to herself or others, the would-be employer is not obligated to endeavor to accommodate the applicant. Indeed, even the *Mantolete* court did not make such a suggestion. The *Mantolete* court set out a two-step analysis consistent with § 213.010(10):

Under § 501, two questions must be asked. *First,* is the applicant presently qualified to perform the essential requirements of the job without a reasonable

probability of substantial injury to the applicant or others? If the answer to this question is affirmative, then employment cannot be denied based upon the handicap. If the answer is negative, then a *second* question must be asked; can reasonable accommodation be made, without undue hardship to the employer, sufficient to enable the applicant to perform the essential requirements of the job without a reasonable probability of substantial injury to the applicant or others?

767 F.2d at 1423 (emphasis in original). MCHR ignored the second step: Even if Mead posed a risk of reasonable probability of substantial injury, could KCPD still make accommodation for her without undue hardship to the department without a reasonable probability of substantial injury to Mead or others.

Thus, a showing that Mead posed a risk of reasonable probability of substantial injury was not the end of the analysis. MCHR was obligated to consider whether Mead had established that KCPD could accommodate her asthma. Because it did not do so, we undertake the task.

■ Before we do, however, we must consider the more basic issue presented by Mead: whether KCPD met its burden of establishing the first step that she suffered a physical or mental impairment which substantially limited one of her major life activities which would interfere with her duties as a 911 dispatcher. We conclude that it did.

Although asthma is not necessarily a physical impairment which substantially limits a person's major life activities, it was for Mead because she did not always take her medicine and, therefore, did not always keep it in control. This, coupled with her frequent hospital treatments resulting from her asthma,[4] made her asthma a debilitating disease. This was a sufficient basis for concluding that Mead suffered an impairment which substantially limited her activities and would have

---

**3.** We believe MCHR to be speaking of "handicap" in the traditional sense and not in the manner defined by § 213.010(10).

**4.** Although she testified that she was hospitalized for treatment of colds and other such ailments rather than for asthma, her asthma aggravated the ailments to the point of requiring special, hospital treatment.

significantly interfered with her being a 911 dispatcher.

■ We still must consider whether KCPD could accommodate her notwithstanding her impairment without undue burden. Mead had the burden of proving this, *Welshans v. Boatmen's Bancshares, Inc.*, 872 S.W.2d 489, 493 (Mo.App.1994), and she failed to meet her burden. She made no effort to demonstrate that KCPD could accommodate her asthma without undue burden. Hence, we must affirm MCHR's decision that KCPD did not commit an unlawful employment practice in refusing to hire Mead as a 911 dispatcher.

SMART, P.J., and ELLIS, J., concur.