Allen E. DEVOR, Appellant,

v.

## BLUE CROSS & BLUE SHIELD OF KANSAS CITY, Respondent.

### No. WD 52169.

Missouri Court of Appeals,
Western District.

Feb. 4, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 1, 1997.

Application to Transfer Denied
May 27, 1997.

**664** ■

---

J.C. Hambrick, Jr., Kansas City, for appellant.

W. Terrence Kilroy, Shughart, Thomson & Kilroy, P.C., Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and SPINDEN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Blue Cross & Blue Shield of Kansas City discharged employee Allen Devor in 1992 after he had worked for the company for thirteen years. Mr. Devor brought suit against Blue Cross, alleging that he was discharged because of a handicap. The trial court disagreed and entered judgment in favor of Blue Cross. We agree with the trial court that Mr. Devor was not handicapped as that term is used in the Missouri Human Rights Act, Chapter 213, RSMo 1994, and that he was discharged due to his inability to perform the job despite reasonable accommodation. We also find no error in various evidentiary matters raised by Mr. Devor. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In reviewing the evidence, we consider only the facts and inferences favorable to the prevailing party. *Welshans v. Boatmen's Bancshares, Inc.*, 872 S.W.2d 489, 493 (Mo. App.1994). This evidence shows that Mr. Devor began working for Blue Cross & Blue Shield of Kansas City in 1979. In mid–1989 the company was reorganized and Mr. Devor accepted a position as a Team Leader. In his new position he directly supervised thirteen workers. Later that year, however, he began exhibiting erratic and disruptive behavior which led to conflict and difficulties in his relations with his co-workers. His supervisors were concerned with his behavior and sought help for Mr. Devor from the company's Employee Assistance Program. Mr. Devor met with a doctor in November 1989 and was diagnosed with Hypomania and Manic–Depression. He was permitted to go on medical leave from work on December 1, 1989, to get his medication under control.

Mr. Devor returned to his supervisory position as a Team Leader on January 8, 1990. On the advice of the Employee Assistance Program, his supervisors restructured his job responsibilities to help him by focusing him on his job and limiting his interaction with staff. Jeanne Payne, one of his supervisors, prepared a list of requirements for his workplace performance and behavior. It required him to spend most of his day on the telephone with customers or handling team paperwork and answering questions from his team. He was to spend little of his time in direct contact with his fellow employees.

Ms. Payne testified that Mr. Devor's behavior after returning to work was satisfactory at first. But while Mr. Devor continued to properly handle customer contacts and paperwork, over time he became unable to successfully handle the portion of his job that involved dealing with co-workers and leading his team of workers. Instead, the evidence showed, he again became disruptive and erratic.

To deal with Mr. Devor's behavior, his supervisors testified that they reduced the number of workers that he supervised in late 1990 or early 1991. They also testified that they were more tolerant of his behavior. Finally, towards the end of 1991, they looked for a job that would not require as much interaction with co-workers. They were able to identify a position that required many of Mr. Devor's skills and did not involve any supervisory responsibilities, but there were no vacancies at this position.

Ms. Payne and other witnesses for the employer presented evidence regarding specific instances of inappropriate conduct that occurred in late 1991 and early 1992. This evidence, which the judge below was free to accept as true, demonstrated that Mr. Devor had a "dark" or "off-color" sense of humor that sometimes led him to make remarks or take action considered inappropriate by others, and that this caused disruption at work.

For example, the employer presented evidence that Mr. Devor disrupted Team Leader training sessions with other workers by making inappropriate remarks. These remarks included referring to a sample business letter as a "piece of sh..," playing a tape of music instead of a tape of customer interactions, and inexplicably introducing himself as "Amos Otis," a former Kansas City Royals baseball player.

Both Ms. Payne and Carol Kelley, another Team Leader, testified that in the fall of 1991 when the customer service unit was reorganized and the staff was divided to work under different managers, Mr. Devor commented that one of the managers was getting the "good people" or "hard chargers" while another manager was getting the "stupid" or "dumb" people. This comment upset some of the workers.

Ms. Payne also testified about Mr. Devor's behavior at an end-of-1991 meeting in a restaurant. She testified that Mr. Devor said something to a waitress that upset her and embarrassed his co-workers. Later, Mr. Devor turned his chair so that it faced away from the table at which he was sitting with his co-workers.

The final incident before Mr. Devor's discharge occurred during a tour of the company that he gave to two new employees. Evidence was presented that Mr. Devor had been negative and unprofessional during the tour, making several comments to the new employees that questioned the competence of different management-level employees of Blue Cross. These comments upset the new employees, and they complained to Jackie Paul, Mr. Devor's immediate supervisor, about his behavior.

On March 13, 1992, shortly after this incident involving the new employees, Ms. Paul wrote a memorandum recounting some of the recent problems caused by Mr. Devor, including his inappropriate and disruptive behavior in training classes and several inappropriate and negative remarks that he made to new employees. She recommended his discharge. Several members of management met to consider Mr. Devor's status and they jointly decided to discharge him on March 18, 1992, for "continued inappropriate negative behavior."

In January 1994 Mr. Devor brought suit against Blue Cross, alleging that he was discharged in violation of the Missouri Human Rights Act ("MHRA"). *See* Chapter 213, RSMo 1994. The case was tried without a jury. On December 4, 1995, the court entered judgment against Mr. Devor. The court found that Mr. Devor engaged in disruptive and inappropriate behavior at work. As a result, it concluded that Mr. Devor had failed to carry his burden of proving that he was handicapped under the terms of the MHRA because no reasonable accommodation could have been made to allow him to perform his job. Mr. Devor appeals the circuit court's judgment. We affirm.

## II. STANDARD OF REVIEW

In judge-tried cases, we affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Welshans*, 872 S.W.2d at 493. Substantial evidence is evidence which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case. *Hurlock v. Park Lane Medical Ctr., Inc.*, 709 S.W.2d 872, 880 (Mo.App.1985). We defer to the trial court's credibility determinations and only consider facts and inferences supporting the judgment. *Welshans*, 872 S.W.2d at 493.

## III. MR. DEVOR WAS NOT A HANDICAPPED EMPLOYEE UNDER THE MISSOURI HUMAN RIGHTS ACT'S DEFINITION OF "HANDICAPPED"

Mr. Devor alleges that his discharge violated the MHRA, which makes it is an unlawful employment practice for an employer to discriminate against or discharge employees because of a handicap. § 213.055, RSMo 1994. To establish a prima facie case of handicap discrimination, discharged employees must show that: (1) they are handicapped, (2) they were discharged, and (3) there is evidence from which to infer that the handicap was a factor in their discharge. *Welshans*, 872 S.W.2d at 493; *Berkowski v.*

*St. Louis County Bd. of Election Comm'rs,* 854 S.W.2d 819, 826 (Mo.App.1993).

■ The burden is on employees to prove that they are handicapped. *Welshans,* 872 S.W.2d at 493. "Handicap" is a term of art under the statute. For this reason, employees cannot prove they are handicapped, and thus entitled to sue for handicap discrimination, simply by showing that they have a substantial impairment. Employees must also show that, if reasonable accommodation is made, the impairment does not interfere with their performance of their work.

More specifically, the statute defines "handicap" as:

a physical or mental impairment which substantially limits one or more of a person's major life activities, a condition perceived as such, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job....

§ 213.010(10), RSMo 1994.

■ Notably, and unlike federal law, the MHRA makes the question of whether the job can be performed with reasonable accommodation a part of the test for determining whether an employee is handicapped in the first instance. *Welshans,* 872 S.W.2d at 493; *Umphries v. Jones,* 804 S.W.2d 38, 41 (Mo.App.1991). This means that employees who suffer physical or mental impairments such that they cannot perform their jobs even after reasonable accommodation is made are *not* handicapped under the Missouri statute. § 213.010(10); *Welshans,* 872 S.W.2d at 493.

■ On the other hand, employees with an impairment but who *can* perform their job with or without reasonable accommodation *are considered handicapped* under the statute and so are entitled to sue for handicap discrimination if the other elements of that cause of action can be proved by showing that the handicap was a factor in their discharge. *Id.;* § 213.055.

■ This case centers on the question of whether Mr. Devor was handicapped. In this Court, the parties have focused their arguments on the issue of whether Mr. Devor has shown he could perform his job with reasonable accommodation. Because we resolve this question in the negative, we do not reach the question whether Mr. Devor's condition constituted or was perceived to constitute a mental impairment which substantially limited one or more of his major life activities.

■ A "reasonable accommodation" is an accommodation that does not impose "undue financial and administrative burdens" on the employer or require fundamental alterations in the nature of the program. *Umphries,* 804 S.W.2d at 41 (quoting *School Bd. of Nassau County, Florida v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307, 321 n. 17 (1987)). State regulations further clarify the meaning of the term as follows:

1. An employer shall make reasonable accommodation to the known limitations of a handicapped employee or applicant.

2. Accommodation may include:

A. Making facilities used by employees readily accessible to and usable by handicapped persons; and

B. Job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters and other similar actions; and

3. In determining whether an accommodation is reasonable, factors to be considered include but are not limited to:

A. The nature and cost of the accommodation needed;

B. The size and nature of a business, including the number and type of facilities and the structure and composition of the work force....

8 C.S.R. 60–3.060(1)(G).

As noted above, Blue Cross presented evidence that it tried to accommodate Mr. Devor's condition by restructuring his job so that he had less contact with fellow workers, by allowing him to supervise fewer employees, and by being more tolerant of his behavior. Despite these attempts at accommodation, Mr. Devor's disruptive behavior continued to create a poor working environment for his co-workers and hindered his

ability to supervise and lead employees on his team.

The company also presented evidence that it tried to locate a different position for Mr. Devor that would require less interaction with co-workers. While the company was able to identify a position that required many of Mr. Devor's skills and did not involve any supervisory responsibilities, there were no vacancies at this position. Mr. Devor suggested no alternative measures that could have accommodated his condition other than telling co-workers to ignore his behavior.

These facts support the trial court's conclusion that the company reasonably accommodated Mr. Devor's condition but that the accommodation was unsuccessful because Mr. Devor still could not adequately perform his job. Common sense tells us that employees, handicapped or not, must be able to get along with their co-workers at least to a minimal degree and not disrupt the workplace. This is especially the case when the employee in question is responsible for leading and overseeing the work of others. For this reason, other courts have recognized that an employer may legally discharge employees who would otherwise be considered handicapped if the discharge is not improperly motivated by an invidious purpose but rather is based on legitimate and rational considerations. *Midstate Oil Co., Inc. v. Missouri Comm'n on Human Rights*, 679 S.W.2d 842, 845 (Mo. banc 1984); *Missouri Comm'n on Human Rights v. Southwestern Bell Tel. Co.*, 699 S.W.2d 75, 79 (Mo.App. 1985).

The inability of an employee to perform his job without disrupting the workplace has been held to be a legitimate and rational consideration in cases such as *Misek–Falkoff v. Int'l Business Machines Corp.*, 854 F.Supp. 215 (S.D.N.Y.1994), *aff'd without opinion*, 60 F.3d 811 (1995), *cert. denied,* — U.S. ——, 116 S.Ct. 522, 133 L.Ed.2d 429, *and* —— U.S. ——, 116 S.Ct. 1333, 134 L.Ed.2d 484 (1996). In that case, an employee claimed that a nervous disorder that made her aggressive and confrontational with supervisors could be accommodated by allowing her to work at home. The court rejected the employee's claim. It found that the employ-er's other accommodations were reasonable and said that merely because the employer could have provided other, or greater, accommodations, did not mean that the accommodations provided were unreasonable. *Id.* at 228. It reasoned that an employer may require "that employees, whether handicapped or not, not cause, or contribute to, undue interruptions and hostility in the workplace." *Id.* at 227.

The court also noted that "[i]t is certainly a 'job-related requirement' that an employee, handicapped or not, be able to get along with co-workers and supervisors" and that "[p]ersonal contact would still be required at critical junctures, triggering chances of recurrent outbursts." *Id.* at 227–28.

■ In the present case, as in *Misek–Falkoff,* substantial evidence indicates that Mr. Devor was discharged as the result of his disruptive behavior at work, and not because of Blue Cross's failure to reasonably accommodate his condition. The MHRA provides that a worker is handicapped and entitled to protection from handicap discrimination only if the worker can do his or her job with or without reasonable accommodation. It does not protect a worker such as Mr. Devor who has failed to show he can do his job with reasonable accommodation.

## III. THE TRIAL COURT DID NOT IMPROPERLY RELY ON HEARSAY TESTIMONY AS TO MR. DEVOR'S INAPPROPRIATE BEHAVIOR

■ Mr. Devor also complains that the trial court improperly permitted the introduction of and relied on hearsay evidence in reaching its decision. As Mr. Devor notes, at trial his supervisors testified several times that some of Mr. Devor's co-workers told them that Mr. Devor had said or done something inappropriate. On some of these occasions the person testifying had little or no personal knowledge of the truth of the matter asserted. Thus, if this testimony had been offered for its truth, it would be hearsay.

However, this testimony was not offered or admitted for its truth. Rather, the trial judge admitted the testimony over the hear-

say objections of Mr. Devor's counsel only for the limited purpose of showing why Mr. Devor's supervisors' believed that he was disruptive at work and unable to get along with co-workers. This was relevant to the employer's claim that Mr. Devor was fired not because of his medical condition but because his supervisors believed he could not get along with his co-workers and because they could not find a vacant position that did not require as much interaction with co-workers. *Cf. Bynote v. National Super Mkts., Inc.,* 891 S.W.2d 117, 121 (Mo. banc 1995) (explaining state of mind exception); *Vinyard v. Vinyard Funeral Home, Inc.,* 435 S.W.2d 392, 396 (Mo.App.1968); McCormick on Evidence § 249, at 103 (John W. Strong, gen. ed., 4th ed. 1992); 6 Wigmore, Evidence § 1789, at 314 (James H. Chadbourn rev. 1976). There is no evidence that the trial judge relied on the evidence for any purpose other than the limited one for which it was admitted.

We further disagree with Mr. Devor that if the evidence just noted is not considered, then there was no substantial evidence to support the claim that he had engaged in disruptive behavior after his return to work in 1990. To the contrary, much non-hearsay testimony, set forth in detail above, was presented to support the trial judge's determination that Mr. Devor was fired because he was unable to perform his job even with reasonable accommodation.

## V. MR. DEVOR HAS NOT PRESERVED OTHER ALLEGED EVIDENTIARY ERRORS

Mr. Devor claims in his second Point Relied On that the trial court erred by admitting evidence of his conduct prior to his medical leave in 1989–1990, and that absent this evidence there was insufficient evidence to support the judgment. We disagree. Even more basically, however, the Point Relied On is itself fatally defective because it nowhere states why reliance on pre-medical leave evidence was legally erroneous, as required by Rule 84.04(d). Instead, the re-

mainder of the Point Relied On inexplicably asserts an entirely different alleged error by the court below in failing to admit evidence that another employee with the same medical condition was considered by the employer to be disabled. The Point also fails to state why exclusion of the latter evidence was error.

We are not required to examine the argument portion of the brief to determine wherein and why the trial court is alleged to have erred in either of the respects set out in the Point Relied On. In any event, such an examination would not be helpful here, because the argument portion of the brief does not discuss either of the issues raised in the Point Relied On, but rather asserts that the trial court erred by failing to find that Mr. Devor could continue to work with reasonable accommodation. This issue has already been addressed above, does not relate to the Point Relied On, and is not supported by citation to any relevant authority. For all of these reasons, Mr. Devor has failed to preserve any of the issues in his second Point Relied On. *Thummel v. King,* 570 S.W.2d 679, 686–88 (Mo. banc 1978).

Mr. Devor has similarly failed to preserve the issue raised in his fourth Point Relied On, in which he asserts that the trial court erred by failing to consider testimony that other Blue Cross employees made inappropriate statements but were not fired. He contends that this evidence indicates that his discharge for making similar inappropriate statements was pretextual.[1] Again, however, he has failed to cite any authority to support his claim, as required by Rule 84.04(d), and so has failed to preserve it for review. *Id.*

For the reasons stated above, the judgment of the trial court in favor of Blue Cross is affirmed.

All concur.

---

1. We further note that the trial court's memorandum shows that it did consider Mr. Devor's evidence of inappropriate comments by the other employees, but that the court simply believed that this evidence failed to show "that [Blue

Cross]'s reason for his discharge was pretextual." The other employees' comments appear to have been isolated instances of inappropriate behavior.