**ROSE CITY OIL COMPANY,
Respondent,**

v.

**MISSOURI COMMISSION ON HUMAN RIGHTS, Appellant.**

**No. 60270.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 19, 1992.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
June 17, 1992.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for appellant.

Tom K. O'Loughlin, II, J. Patrick O'Loughlin, O'Loughlin, O'Loughlin & McManaman, Cape Girardeau, for respondent.

SMITH, Presiding Judge.

The Missouri Commission on Human Rights (Commission) appeals from a judgment of the Circuit Court reversing a decision of Commission that Rose City Oil Company was guilty of discriminating against an employee because of the handicap of the employee.

Rose City owns and operates several convenience stores named Cut Mart. The stores sell gasoline, lubricants, tobacco products, liquor and have delicatessens. Scott McClanahan, complainant, was employed at Cut Mart #19 in Benton, Missouri, from April 1986 to April 1987. McClanahan was hired as a clerk. A clerk's duties included serving as cashier, stocking, cleaning, ordering, doing reports and making sandwiches in the delicatessen. After three or four months McClanahan did predominately sandwich making.[1] In early March, 1987, Randy Jones, a Rose City supervisor, was informed by a customer in the Sikeston store that an employee in the Benton store had Acquired Immune Deficiency Syndrome (AIDS). Jones called his supervisor, Steve Evans, and informed him of the rumor. Evans instructed Jones to take the necessary steps to get the rumor stopped. Jones spoke with Rose Dixon, manager of the Benton store. She identified McClanahan as the employee about whom the rumor was circulating. Dixon and Jones decided to move McClanahan from his sandwich making duties to cashier duties. Both jobs are included within the job description of "clerk" and the pay is the same. The rumor was discussed with

---

1. McClanahan testified before the Commission that his work after three or four months was exclusively sandwich making. Testimony from employees of Rose City was that his work was predominately sandwich making. The Commission in its decision stated on several occasions that there were no credibility issues involved, concluding, presumably, that whichever evidence was believed the result was the same. The same is apparently true of other divergences in the testimony.

McClanahan by both Jones and Dixon and Jones advised McClanahan that he would return to sandwich making after a little while when the rumor had died down. McClanahan denied that he had AIDS nor did he have himself tested for the disease. The rumor, however, increased and after several weeks Jones told McClanahan that he could not yet return to sandwich making. Shortly thereafter McClanahan was terminated for insubordination. The termination was not an issue in the Commission hearing. There was no dispute that Rose City did not start the rumor or in any way spread it.

After hearing the Commission found that McClanahan was "perceived" as having a "handicap", that McClanahan suffered an "adverse action" when he was removed from the position of making sandwiches, and that therefore McClanahan had made a prima facie case of handicap discrimination. It then rejected Rose City's contention that McClanahan could be a health hazard on the basis of testimony of a doctor employed by the Department of Health that the probability of transmission of AIDS by a food handler was virtually zero. The hypothetical question which brought this response did not include the undisputed fact that in preparing sandwiches McClanahan utilized an electric slicer and that Rose City had had several instances of employees cutting themselves seriously enough to file worker's compensation claims. The doctor identified blood passing from one individual to another as one of the three known methods of transmission of the AIDS virus. He further testified that in a small percentage of cases the means of transmission is unknown. He also testified that 100% of the people infected with the AIDS virus eventually get the disease unless they die from other causes, and that the disease is invariably fatal. The Commission further rejected as a defense the "reoccurring idea of customer preference". The Commission ordered Rose City to cease and desist from discriminating against its employees on the basis of their handicap. It further ordered Rose City to pay McClanahan $5000 "as damages for the emotional distress and humiliation which he suffered". The trial court reversed and ordered costs paid by the Commission.

■ In order to establish a *prima facie* case of discrimination, the complainant must establish: (1) that the complainant had a handicap within the meaning of the statute; (2) that an adverse action was taken against complainant by respondent; and (3) evidence from which to infer that the complainant's protected status was a factor in the respondent's adverse action. *Laclede Cab Company v. Missouri Commission on Human Rights*, 748 S.W.2d 390 (Mo.App.1988) [5]; *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) [S.Ct. 5, 6]; *Midstate Oil Co., Inc. v. Missouri Commission on Human Rights*, 679 S.W.2d 842 (Mo. banc 1984) [1, 2]. Section 213.010(8) RSMo 1986 defines "handicap" as "a physical or mental impairment which substantially limits one or more of a person's major life activities, *or a condition perceived as such*, which with or without reasonable accommodation does not interfere with performing the job, utilizing the place of public accommodation, or occupying the dwelling in question". (Emphasis supplied). It is unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's handicap. Section 213.055 RSMo 1986.

■ McClanahan testified he did not have AIDS. The Commission contends that he was "perceived" as having AIDS and therefore was covered by the definition of handicap. It is reasonably possible to interpret the use of "perceived as such" in the definition in two ways. First, that the phrase relates back to all that preceded it. Second, that the phrase relates back to that portion of the definition reading "which substantially limits one or more of a person's major life activities". If the former construction is utilized the definition is applicable to a person having a condition which is perceived as a physical or mental impairment whether it is in fact or not. If the latter construction is utilized the definition applies to a person who has a physical or mental impairment in fact which is perceived as substantially limiting his major

life activities whether it does or not. The Commission supports its ruling on the former construction. We find it unnecessary to resolve the issue. McClanahan, as far as the record shows, suffers from nothing. He has no "condition" to be "perceived". The dictionary definition most nearly applicable to the context of this statute is "the physical status of the body as a whole usually used to indicate abnormality". *Webster's Third New International Dictionary.* The position of the Commission is to define handicap to include the "perception of a condition which would be a handicap". That is not the language of the statute. The statute requires the existence of a condition which might be perceived to be a handicap. In the absence of evidence that McClanahan in fact had a "condition" the statute was not applicable to him.

■ Additionally, there was no evidence that McClanahan suffered from an adverse employment action by Rose City. He was hired as a clerk which duties included a number of activities. He was not hired as a sandwich maker. His duties on any given day could be any of a broad range of activities covered by his job description. The conclusion that the movement of McClanahan from sandwich making to running the cash register was adverse was premised solely upon McClanahan's preference for sandwich making. The job he was given was within the job description for which he was hired and commanded the same pay as sandwich making. The Commission's position, that any job adjustment which was influenced by a complainant's condition is unlawful discrimination, ignores the second element of the *prima facie* case and largely misses the point of the statutory scheme. There was no interference here with McClanahan's compensation, terms, conditions, or privileges of his employment. There was no change in his compensation and there was no term or condition of his employment that he would do only sandwich making. Nor was it a privilege of his employment that he would select the type of work he would do. The Commission failed to make a *prima facie* case that McClanahan was discriminated against because of a handicap because it failed to establish either a handicap within

the statute or an adverse action by the employer.

We will not deal with the third element of a *prima facie* case other than noting that if the doctor's testimony establishes that the AIDS virus cannot possibly be transmitted by a food handler, there is scant, if any, evidence that such fact is or should be known to laymen required to make decisions concerning health protection of their customers, or to their customers, and we find it questionable that public fear or terror of possible AIDS contamination can simply be equated to "customer preferences".

■ The Commission also challenges the trial court's order assessing costs against the Commission. It is settled that absent statutory authority court costs cannot be recovered in state courts from the State of Missouri or its agencies or officials. *State ex rel. Independence School District v. Jones,* 653 S.W.2d 178 (Mo. banc 1983) [15, 16]; *Asarco, Inc. v. McNeill,* 750 S.W.2d 122 (Mo.App.1988) [7, 8]. The Commission, as an agency of the state, is entitled to the benefit of that law. Rose City argues that the costs are proper under § 536.087(1) RSMo Supp.1990. We agree that they could have been awarded under the proper procedures but that those procedures were not followed.

The statute involved provides that a party who prevails in an agency proceeding or civil action arising therefrom, brought by or against the state, shall be awarded those reasonable fees and expenses incurred by that party in the civil action, unless the court finds that the position of the state was substantially justified or that special circumstances make an award unjust. This case began as an agency action brought by the state and became a civil action upon Rose City's appeal of the Commission decision. The trial court has made no finding that the position of the state was substantially justified or that special circumstances make an award unjust.

The definition of "reasonable fees and expenses" found in § 536.085(4) does not specifically include costs. However, in defining what constitutes reasonable fees and expenses it does not specifically limit those

items to those listed but simply states that the listed items are included. "Costs" are a much more usually allowed recoupment to the prevailing party in litigation than are the items listed under the statutory definition of "reasonable fees and expenses". We do not find it reasonable that the General Assembly would authorize the recoupment of the items listed but not authorize the recoupment of costs or require the state to pay the costs. We find that costs are included as "reasonable fees and expenses" within the meaning of the statute.

■ However the statute provides certain requirements to obtain the award and imposes certain time limits on seeking such awards. The record does not establish that such time limits have been met or that the required procedures have been followed. The provisions of the statute have not been complied with and the award by the trial court was erroneous.

Award of costs is reversed, in all other respects the judgment is affirmed.

KAROHL and AHRENS, JJ., concur.