**In re the ESTATE OF Sandra LATIMER.**

**LORENZ, Kandi, Personal Representatives, Respondents,**

v.

**FILTRONETICS, INC., Appellant.**

**No. WD 50133.**

Missouri Court of Appeals, Western District.

Nov. 14, 1995.

Michael W. Manners, Welch, Martin Albano & Manners, P.C., Independence, for Respondents.

John J. Yates, Gage & Tucker, Kansas City, for Appellant.

Before FENNER, C.J., and P.J., LOWENSTEIN and BRECKENRIDGE, JJ.

LOWENSTEIN, Judge.

This is an employment handicap discrimination action brought by a former employee of Filtronetics who had cancer, was laid off and never recalled, and who then sued Filtronetics, the appellant, for wrongful discharge under § 213.055, RSMo (1994) which states in pertinent part:

1. It shall be an unlawful employment practice:

   (1) For an employer, because of the ... handicap of any individual:

   (a) To ... discharge any individual ... because of such individual's ... handicap;

"Handicap" is defined in § 213.010 as:

   (10) ... a physical ... impairment which substantially limits one or more of a person's major life activities, *a condition perceived as such,* or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job. (Emphasis added)

The trial court rendered judgment for Latimer for $4,209 in lost wages, $15,000 in punitive damages, and $15,000 of attorney's fees.

■ In reviewing this court-tried suit, deference is given to the judge's resolution of witness credibility. Rule 73.01(c)(2). Only facts and inferences favorable to the prevailing party, the employee Sandra Latimer[1],

---

1. Latimer died shortly after this trial which occurred in August, 1994, and her personal representative, Lorenz, has been substituted. This opinion will refer to Latimer as the plaintiff-respondent.

will be considered, and the judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless the judgment erroneously declares or applies the law. *Welshans v. Boatmen's Bancshares, Inc.* 872 S.W.2d 489, 493 (Mo.App.1994).

A brief time line of the events will be set out before the trial court's findings.

| | |
|---|---|
| 1980- | Latimer has breast cancer—a mastectomy is performed. |
| 1985 - | Latimer has lumpectomy (all lymph nodes on right side removed.) |
| July 16, 1990 - | Latimer is hired by Filtronetics as an assembler at $4.50 an hour. Her supervisor is Baird, whom she knows through son's baseball. She is told that her health and life insurance benefits will start Nov. 1, 1990 (the end of her probationary period.) |
| Sept 18, 1990 - | Latimer promoted to stock room manager, told she could return to being an assembler if new position doesn't work out. |
| Oct 22, 1990 - | Filtronetics evaluates Latimer. (Rated good in all categories and meets all work standards. Described as "hard worker," "cooperative," "follows instructions well.") In a conversation with supervisor, Montoya, Latimer tells of history of cancer. |
| Oct 24, 1990 - | Latimer develops severe pain in right arm and leaves work for four days. |
| Oct 30, 1990 - | Latimer calls Montoya and tells her doctor says she can return to work. Supervisor tells Latimer due to slowdown in production, Latimer is temporarily laid off. |
| Oct 31, 1990 - | Latimer received the following letter from Filtronetics' vice president, Magda Haber: |

This is to inform you that in view of the continuing slowdown in production, it has become necessary to put you on a layoff status which is expected to continue at least through the end of this year.
Your medical and dental insurance will not become effective November 1, 1990, as scheduled. If, however, you are recalled to work, your insurance should become effective at that time.

Six other employees (all assemblers) are laid off by Filtronetics.

| | |
|---|---|
| Nov 4, 1990 - | Latimer files for unemployment. Supervisor Montoya and Kearney, an employee from another department, handle stockroom manager's position. |
| Nov 12, 1990 - | One of the laid-off assemblers is personally called by supervisor Baird, and is rehired. |

Filtronetics begins to look for new assemblers. (First hiring starts in February 1991, others come in through 1992).

| | |
|---|---|
| Dec 9, 1990 - | Filtronetics hires as Stockroom Manager, Houston, a former employee who had been discharged years earlier, who answered the ad for another position at Filtronetics. |

After being laid off on October 30, 1990, Latimer never heard back from Filtronetics, nor did she call the company. She took other jobs after learning in January 1991 the stockroom position had been filled. Latimer filed a complaint with the Human Rights Commission, and upon receiving a favorable response, filed this suit. Her claim at trial and theory for recovery under chapter 213 has been that not being recalled while others were recalled and new persons were hired amounted to discharge by the employer because Filtronetics perceived she had cancer, and that Filtronetics laid her off one day before her medical benefits kicked in to prevent its insurance premium from rising. This suit falls into the analysis pointed out by the Eastern District on a claim of disparate treatment by an individual due to handicap who "was subjectively discriminated against by his employer". *Laclede Cab v. Commission on Human Rights,* 748 S.W.2d 390, 395 (Mo.App.1988).

During the time in question, Filtronetics employed about fifty people. Filtronetics is a custom manufacturer of filters for communication and medical equipment. The devices it makes filter out unwanted electrical frequencies. Their business depends on the amount of contract work it has, so layoffs occur from time to time. The entry level position of assembler requires no previous experience, but extensive on-the-job training is necessary. Filtronetics takes three months to train assemblers, during which a ninety day probationary period is in effect. In addition, there is a ninety day waiting period before medical insurance benefits commence.

In July 1990, Latimer, age fifty, a divorced mother of two, heard about the opening for an assembler from Sue Baird while at their sons' baseball game. Latimer told Baird about her bouts of cancer, thought to be in remission. After she was hired, Latimer had no problems doing the work as an assembler, and there were no complaints about her

work. To the contrary, in September, the plant manager and her supervisor, Baird, said they were pleased with her work and offered her a promotion to stockroom manager at a salary increase. Latimer specifically said that if the stockroom job did not work out, she wanted to go back to the assembly line and she was assured she could have her old job back.

As pointed out in the above timeline, Latimer's employee evaluation as stockroom manager on October 22 rated her "good" in all categories, lauded her attitude and willingness to learn, and concluded she met all standards of productivity. This evaluation was done by Ms. Montoya, supervisor of the stockroom manager's position. Montoya knew of her medical history.

On October 24, 1990 Latimer missed work due to severe pain in her right arm. She reports her doctor diagnosed this problem as relating back to her having had all lymph nodes on her right side removed. On October 30, her physician released her to return to work. Latimer immediately called Montoya who said that the company was laying off people and that Latimer was due to be laid off on October 31. The next day, October 31, Latimer received her lay-off notification letter. Latimer waited to be "recalled" by the company and expected to return to work. She never received a call. Finally, finding out in January 1991 that the stockroom manager's position had been filled, she took temporary jobs. Her medical problems reemerged in 1992–93.

Filtronetics claimed the October 31 layoff date had nothing to do with the fact that Latimer's health insurance started the next day. Haber said she never knew Latimer had cancer. At trial, Haber testified that the company did not have a call-back or a recall policy toward laid off employees, and did not have the manpower to do so. On cross-examination Haber was shown an affidavit she had executed a year earlier in the case saying: "In early October, 1990, Filtronetics experienced a work slowdown. Production increased around November 12, 1990, and some laid-off employees were later recalled." Haber explained the word "recall" had been misused in the letter to Latimer and in the

affidavit. Filtronetics' attorney asked her, "So what did you mean by the word " 'recall'?" She answered, "I mean that if they call us and say they want to come in, we say, 'Okay. Come back'. That's simply the way I saw it."

Haber admitted that the company letter of October 31st using the word "recall" would lead a reasonable employee to assume the company would call them. Haber said "recall" to her meant the employee was supposed to call the company. She explained any language misperception by saying that, "I'm a foreigner."

Haber was cross-examined about the company's answer to interrogatories which named the three assemblers dismissed at approximately the same time as Latimer who were "called back to work." Haber said the answers meant to show only "the date they returned to Filtronetics."

In January of 1991, while at a baseball meeting, Latimer overheard Baird telling Baird's husband a person had been hired as stockroom manager. Up until that time Latimer had expected to be recalled by Filtronetics. The person hired to fill the position, Ms. Houston, had been terminated as stockroom manager by Filtronetics in 1987 for insubordination and misconduct, having been described then as unreliable but knowledgeable. Latimer's replacement was given a reprimand in 1991 for cussing an employee, spending too much time in other departments instead of doing her own work, and eating and drinking in the stockroom.

The focus of Filtronetics' evidence was that it did not know of Latimer's history of cancer since neither supervisor had told Haber of those conversations, and further, it had no policy for recalling employees, but waited to recall or rehire when the employee called them back.

Latimer provided a witness who was in the insurance business, found to be credible by the trial court, who said an employer in Filtronetics position would face higher insurance premiums in the event one of its employees developed cancer during their tenure of employment.

Filtronetics' appeal focuses on: 1) the failure of evidence to support a finding of handicap; 2) insufficient evidence to support a conclusion that its actions were based on a handicap of Latimer, since Haber did not know of Latimer's history; and 3) insufficient evidence to support the award of punitive damages. Before addressing the points on appeal, a brief review of the mechanism for decision making in employment discrimination is in order.

■ The three-stage burden-shifting framework for these cases is set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and is used to progressively sharpen the inquiry into the often elusive question of whether intentional discrimination has taken place. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *Hairston v. Gainesville Sun Publishing Company*, 9 F.3d 913, 919 (11th Cir.1993). It is here noted that Missouri courts have adopted federal standards in claims for discrimination under Title VII of the Civil Rights Act of 1964. *Midstate Oil Company v. Missouri Commission on Human Rights*, 679 S.W.2d 842, 845–46 (Mo. banc 1984). The first stage of the *McDonnell Douglas* test requires the employee to make a prima facie showing of being in the protected class, of meeting job expectations, and of experiencing adverse employment action. *Woodman v. Haemonetics*, 51 F.3d 1087, 1091 (1st Cir.1995); *Crimm v. Missouri Pacific R. Co.*, 750 F.2d 703, 711 (8th Cir.1984); *Berkowski v. St. Louis County*, 854 S.W.2d 819, 821, 826 (Mo. App.1993). Having made a prima facia case gives rise to a rebuttable presumption of discrimination and leads to the second stage, where the employer must produce sufficient competent evidence, when taken as true, of a non-discriminatory reason. Upon the employer's doing so, the presumption of intentional discrimination disappears. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, ——, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993), *Midstate Oil*, 679 S.W.2d at 846. In the third stage, the "trier proceeds to decide the ultimate question: whether plaintiff has proven 'that the defendant has intentionally discriminated' against [the employee] be-

cause of a handicap." *Hicks*, 509 U.S. at ——, 113 S.Ct. at 2749; *See also, Laclede Cab v. Com'n on Human Rights*, 748 S.W.2d 390, 394 (Mo.App.1988). In plain language, this means the plaintiff has proven the reasons offered by the defendant are pretextual. *City of Clayton v. Com'n on Human Rights*, 821 S.W.2d 521, 527 (Mo.App.1991). The following third stage analysis of the *Hicks* court is important and particularly applicable to this case: "The fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Hicks*, 509 U.S. at ——, 113 S.Ct. at 2749. The Court went on to say the "rejection of the [employer's] proffered reasons, will *permit* the trier ... to infer the ultimate fact of intentional discrimination." *Id*. [footnote omitted]. *LeBlanc v. Great American Insurance Co.*, 6 F.3d 836, 843 (1st Cir.1993), adds that not only is the evidence of the prima facie case to be considered, but all the evidence is to then be examined to determine if the inference can be supported that the employer's decision was inspired by animus toward a handicapped employee. Nothing in the foregoing analysis detracts from the plaintiff's continuing burden of proof of being a victim of intentional discrimination, and carrying the responsibility of persuasion on the ultimate issue in the case—that the reason or reasons given by the employer for the employment action is a pretext for handicap discrimination. *Sanchez v. Puerto Rico Oil Company*, 37 F.3d 712, 720 (1st Cir.1994).

Finally, as apropos under the quoted language of Hicks, the trial court was unequivocal in announcing the credibility of Haber at trial "was convincingly impeached" by her prior affidavit on the recall of employees. The court went on to say that supervisor Baird countered the company's position that former employees had not been called to come back to work. The court found that given the lack of credibility of the Defendant's explanation as to why it failed to recall Plaintiff to her position as stock room manager or as an assembly line worker, it was reasonable to infer that Plaintiff was termi-

nated and never recalled because Defendant knew that Plaintiff suffered from cancer. This conclusion is bolstered by Defendant's admission that Plaintiff was a "very good employee."

## I. WAS LATIMER HANDICAPPED AS DEFINED IN SECTION 213.010?

■ There was sufficient evidence to support the trial court's findings that Latimer (1) had a condition perceived as a physical impairment or (2) a record of impairment under the definition of handicap in § 213.010.

Filtronetics argues that to be perceived as having a handicap, the employee must have a condition, or the statute is not applicable under *Rose City Oil Company v. Missouri Commission of Human Rights,* 832 S.W.2d 314, 317 (Mo.App.1992). *Rose* does indeed contain language construing the statute in question as requiring a finding of a condition which is perceived to be a handicap. *Id.* However, *Rose* involved a person employed as a clerk at a convenience store who had several duties including serving as a cashier, stocker and sandwich maker. After several months the employee was predominately a sandwich maker. *Id.* at 315. A false rumor among customers began circulating that the employee suffered from AIDS. *Id.* at 315–16. The employer temporarily switched the person to duties other than sandwich making but did not reduce his hours or pay. The Eastern District held for the employer against the employee's claim of having been perceived as having a condition amounting to a physical impairment which substantially limited a major life activity. *Id.* at 317. First, the court said the employee had no "condition" to be "perceived," since there was no evidence at all he had AIDS, or any disease which would amount to a "condition." *Id.* Second, the court found no evidence of any adverse employment action by the employer.

*Rose City* does not aid Filtronetics. Latimer had a history of cancer. She missed time from work because of pain that could have been perceived to have been associated with a flare-up of her condition. Cancer, even in remission as here, could be seen as a condition that would substantially impair La-

timer's major life activities. *City of Clayton v. Comm'n on Human Rights,* 821 S.W.2d at 528 ("impairment" of cardiovascular system limited a major life activity). The employee in *Rose City* kept his job and his pay—here Latimer was laid off subject to a recall which never occurred for two positions for which she was qualified. Latimer was never recalled, but others were hired or recalled to fill both positions, the *same* positions. The position of stockroom manager *never went unfilled;* it was highly important to the functioning of the plant and was never unmanned, even after Latimer was laid off.

Nor do the facts here fit within *Missouri Comm'n of Human Rights v. Southwestern Bell,* 699 S.W.2d 75, 77–78 (Mo.App.1985). In *Bell* the plaintiff applied for a secretarial position and the company did not hire her because of her being overweight and having high blood pressure. In that case, the plaintiff/employee specifically denied she had a handicap; she therefore was not a member of a protected class.

As stated earlier, there has never been any complaint about Latimer's job performance as might give a nondiscriminatory reason for her layoff and failure to be recalled. *Ferry v. Roosevelt Bank,* 883 F.Supp. 435 (E.D.Mo. 1995).

## II. DID FILTRONETICS HAVE KNOWLEDGE OF LATIMER'S HANDICAP?

■ This point hinges on Filtronetics' supposed lack of knowledge of Latimer's medical history. Filtronetics claims since it did not know of any handicap, it cannot be convicted of a discharge for discriminatory reasons. Filtronetics says there was insufficient evidence to show "the decision maker, Magda Haber, [knew] of Latimer's alleged handicap or medical history." The evidence favorable to Filtronetics was that supervisors Baird and Montoya testified that they did not tell Haber of Latimer's cancer, and Haber said that she knew nothing about Latimer's medical condition until she received a notice from the Human Rights Commission.

The trial court was under no compunction to believe the evidence relied upon by the

employer. Under the facts here, the court was justified in attaching no credibility to Haber's testimony. Latimer's two immediate supervisors admitted knowing of Latimer's condition prior to the layoff, and as such, the corporate employer, under agency principles, could hardly claim to be ignorant of Latimer's cancer in remission. *Carrero v. New York City Housing Authority*, 890 F.2d 569, 579 (2nd Cir.1989). This is hardly a situation where the employee withheld information and the employer had "no knowledge of the factors from which the handicap might be inferred." *Grimes v. U.S. Postal Service*, 872 F.Supp. 668, 676–77 (W.D.Mo.1994). *Grimes* was discharged from the Postal Service for sale of marijuana. He filed a handicap complaint because of his addiction to marijuana. He admitted he kept his marijuana use a secret from the Service. The court there held the employer did not have notice of the handicap, therefore the plaintiff did not make a prima facie case of firing based on handicap.

## III. PUNITIVE DAMAGES

■ The following findings and conclusions of the trial court are described by the appellant as an abuse of discretion:

> 38. Defendant was aware of its own mendacity in trying to claim that it had no policy of recalling employees when it clearly did. That mendacity, and Defendant's attempt to cover up its actions, evidences indifference to the rights of Plaintiff and an evil motive. Defendant was clearly aware of its duty under the law to not discharge Plaintiff or fail to recall her because of her previous experience with cancer. Defendant's intentional violation of the law justifies the imposition of punitive damages in the amount of $15,000. The $15,000.00 punitive damages award equals the value of the Life Insurance Policy Plaintiff would have received if Defendant would not have wrongfully refused to recall Plaintiff back to work.

In its brief, Filtronetics sums up the evidence against it as follows:

> At worst, Filtronetics was portrayed as an employer whose policies are applied inconsistently by various supervisors and

which failed to comprehend that Latimer may have expected to be contacted by the company to return to work.

With regard to this point, our Supreme court has said in *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989):

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." Restatement (Second) of Torts, § 908(2) (1979). We believe the Restatement properly sets out the law in the language readily understood by lawyers and lay people alike.

Without repeating all the facts, the court could reasonably infer Latimer was effectively terminated, after what was perceived to be a flare-up of her cancer, only a day before she became entitled to company-paid medical or life insurance. Such action was outrageous and could be found by the fact-finding to be motivated, contrary to chapter 213, to avoid extra costs due to Latimer's cancer. Therefore, imposition of punitive damages was appropriate. *Carpenter v. Chrysler Corporation*, 853 S.W.2d 346, 364 (Mo.App.1993).

## IV. CONCLUSION

At first blush, the facts and ruling of the Supreme Court in *Hazen Paper Company v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) might seem to support Filtronetics' position in the case at bar. The discharged employee filed under the federal Age Discrimination in Employment Act when he was discharged before his pension benefits vested. The Court held there was no actionable disparate treatment under that Act, because the employee was terminated because of his time on the job, not because of his age. *Id.* at 612–614, 113 S.Ct. at 1707–08. The Court declined to infer age motivation where pension benefits based upon time on the job were to vest. Here, however, Latimer's condition, cancer, did directly impact on the employer's obligation for increased insurance premiums, and handicap could be inferred as the motivating factor.

The employee, Latimer, has carried her burden of proof of discrimination under the statute. The actions of Filtronetics amounted to a termination—a termination one day before its insurance costs would be hiked.

By all reasonable inferences, the company perceived Latimer's condition had reemerged and perceived her cancer would cost it money. *Laclede Cab*, 748 S.W.2d at 397–398. There is no explanation for the company's action that is based only on nondiscriminate considerations, relating to the employer's business operations, that Latimer could not perform *either* of the jobs she had done. *Midstate Oil*, 679 S.W.2d at 847. The company called or recalled less experienced and less senior people as assemblers, and *never* left the stockroom manager's position open following Latimer's lay-off. Filtronetics' efforts to support or explain its "recall" policy, or lack thereof, appeared strained and could be disregarded, and under the third test, allowed the trial court to decide the ultimate issue—that the reasons given by the company for its actions toward Latimer were pretext for handicap discrimination. *Missouri Com'n v. Southwestern Bell*, 699 S.W.2d at 79. Again, the finding of disbelief of Filtronetics' justification not compelling a finding of liability, *Hicks, supra*, the plaintiff can carry the burden on pretext by introducing a substantial amount of evidence of the termination being discriminatory. *Saulpaugh v. Monroe Community Hosp.* 4 F.3d 134, 141–42 (2nd Cir.1993). Latimer's burden has been sustained by the evidence in this record and all reasonable inferences.

All concur.