Ermal SNYDER, Plaintiff–Appellant,

v.

ICI EXPLOSIVES USA, INC.,
Defendant–Respondent.

No. 20712.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 13, 1997.

Daniel R. Ray, Hershewe & Gulick, P.C., Joplin, for plaintiff–appellant.

Malcolm L. Robertson, John Mollenkamp, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for defendant–respondent.

PREWITT, Judge.

Ermal Eugene "Gene" Snyder (Plaintiff) appeals from an adverse judgment entered following non-jury trial on his claim of handicap discrimination against ICI Explosives, USA, formerly Atlas Powder, Inc. (Defendant).

Plaintiff worked for Defendant in various capacities from October, 1973, to December, 1991. In 1989, Plaintiff began to experience dizziness, blackouts, and a loss of pulse when he raised his left arm above his head. Upon being diagnosed as suffering from "thoracic outlet syndrome," Plaintiff underwent surgery in which a portion of his left rib was removed to relieve pressure on nerves.

Later that year, Plaintiff slipped at work, which caused an 80–pound metal container to fall onto his head. Plaintiff again began to experience dizziness and blackouts as well as aching around his shoulders and neck. Eventually, one year later, in August, 1990, Plaintiff went on disability. Shortly thereafter, Plaintiff was involved in an automobile collision which apparently aggravated Plaintiff's injuries.

In October, 1990, Plaintiff underwent a laminectomy. Plaintiff later had a second operation to remove a herniated disk, which involved fusion of vertebrae in Plaintiff's spine.

After the second surgery, Plaintiff showed signs of improvement and sought to return to his old job. Dr. Daus, the physician who performed the surgery, signed a return-to-work slip without noting any restrictions. He testified at a deposition that he did not know the nature or details of Plaintiff's job and assumed that Plaintiff would undergo another examination by the company doctor for the determination of whether he was fit to return. The physician stated that "it was my understanding that [Plaintiff] was supposed to be assessed by company people" and the return-to-work slip was meant to

indicate he "thought it was safe to undergo that test."

At the time of his injury, Plaintiff was working in assembly-type production of explosive-filled shells. The job required him to rotate through various positions involving the filling, packing, and moving of explosive powder and shells. These tasks necessitated making the same motions hundreds of times a day.

After examining Plaintiff, the company physician, Dr. Doody, recommended that Plaintiff not be retained in his current position. Doody testified at trial that he was concerned that the repetitive twisting, bending and lifting required by Plaintiff's former job may, over a period of time, cause his neck and back problems to return.

Administrators working for Defendant acted upon Doody's recommendation and considered the possibility of transferring Plaintiff to another position. They eventually decided there was no position available which Plaintiff could perform without jeopardizing his health and sent Plaintiff a termination letter. The letter, dated December 26, 1991, and a subsequent service letter dated February 7, 1992, noted the results of Dr. Doody's examination and Plaintiff's "medical condition" as the basis for the termination.

At the time, Plaintiff was pursuing a worker's compensation claim based on his disability and in July, 1992, was examined by Dr. Moshen. Moshen rated Plaintiff at 15% disability, and there was evidence that Plaintiff told the doctor he was experiencing pain in his shoulders and left arm and had muscle spasms.

An occupational medicine physician, Dr. Estep, testified at trial that there was a greater than normal risk that Plaintiff would re-injure his neck and back should he attempt to return to his former job.

After being terminated by Defendant, Plaintiff eventually obtained employment repairing and constructing mobile and modular homes. Plaintiff testified that this job required him to lift bundles and other items weighing more than 50 pounds, climb lad-

ders, work above his head and perform other physically demanding tasks. He also testified that the construction job did not require repetitive motions or heavy lifting more than two or three times a day, and he could take a break when he felt excessive pain or strain.

Plaintiff filed a complaint with the Missouri Commission on Human Rights (MHCR) on April 30, 1992, and the MHCR issued a Right to Sue letter, pursuant to § 213.111, RSMo 1986.

### Point I.

Plaintiff contends in his first point that the trial court's finding that he had a physical condition that interfered with his ability to work at "his prior job or any other job for which he was qualified" was reversible error.

In a court-tried case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Welshans v. Boatmen's Bancshares, Inc.*, 872 S.W.2d 489, 493 (Mo. App.1994). The appellate court defers to the trial court's resolution of witness credibility. *Id.* The trial court may accept or reject all, part, or none of the testimony of witnesses. *Behr v. Bird Way, Inc.*, 923 S.W.2d 470, 476 (Mo.App.1996).

In his reply brief, Plaintiff argues that his medical condition may have created a risk of injury if he were to return to work at Defendant's factory, but it did not interfere, *per se,* with his performance of that work. He concludes from this that the trial court committed a "reversible error of law."

As Plaintiff acknowledges, MCHR rules construing provisions dealing with handicap discrimination allow employers to take into account a person's disability if it is job related. 8 CSR 60–3.060(1)(F)2–3. The rules also indicate that a threat to the person or others' safety may make a disability job related. 8 CSR 60–3.060(1)(F). A disability that does not make a job physically impossible, but jeopardizes safety may in this way interfere with a person's ability to perform the job. *See, e.g., City of Clayton v. Mo.*

*Comm'n on Human Rights,* 821 S.W.2d 521, 531 (Mo.App.1991) (threat to public safety considered legitimate reason for discharge).

Plaintiff does not dispute findings by the trial court that Plaintiff risked re-injuring his neck and back if he returned to his job at the factory. According to the findings, Plaintiff could suffer muscle spasms, numbness of the hands, pain and paralysis. The trial court also noted that the factory work "involved dangerous activity in which good health and physical condition was a primary consideration to the job."

There was substantial evidence to support the finding that Plaintiff's physical condition interfered with his ability to perform the essential functions of employment at the factory. Point one is denied.

### Point II.

In his second point, Plaintiff contests the trial court's ruling that reasonable accommodations for his disability were not available. The point says:

The trial court erred in finding that Defendant could not make reasonable accommodations for [Plaintiff] because [Plaintiff] needed no accommodations, and even if he did, Defendant had made accommodations in the past for similarly situated employees and Defendant could have done so for [Plaintiff]. This finding was not supported by substantial evidence, was against the weight of evidence and was arbitrary and capricious.

The parties agree that Plaintiff had the burden of showing he had a "handicap" under the Missouri Human Rights Acts, codified at Chapter 213, RSMo. Section 213.010(8), RSMo 1986, defines handicap as "a physical ... impairment ... which with or without reasonable accommodation does not interfere with performing the job ... in question." The question of reasonable accommodation is thus a part of the test of whether a handicap exists. *City of Clayton,* 821 S.W.2d at 529.

Plaintiff argues there was evidence Defendant could have accommodated him by transferring him to another position that did not require the kind of work that precluded him

from the assembly-type positions he initially sought.

In determining whether an accommodation is reasonable, factors to be considered include good faith efforts previously made to accommodate similar disabilities. 8 CSR–3.060(G)(3)(D). Reasonable accommodation does not require an employer to find another job for an employee who is unable to perform the job he was doing, but an employer cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies. *Berkowski v. St. Louis County Board of Election Comm'rs*, 854 S.W.2d 819, 826–27 (Mo.App. 1993) (declining to decide whether reference to one occasion when an employer transferred a disabled employee is sufficient to create an inference of a policy). A plaintiff must show not only that an alternative position was vacant, but that he was qualified for that position. *Id.* at 827.

Here, Plaintiff testified that he was capable of doing the work required by positions on the janitorial staff or in the laundry room. An administrator at Defendant's factory, however, testified that while Plaintiff was considered for those positions and those positions may have been technically available, they also required physical activity such as frequent heavy lifting and repetitive motion that posed a risk to Plaintiff's safety.

Under the applicable standard of review, the trial court's finding that reasonable accommodation was not available was not error. Point two is denied.

### Point III.

Plaintiff's third point claims error on the part of the trial court in imposing the burden of proving Defendant's conduct was motivated by discriminatory intent. In its Conclusions of Law, the trial court outlined the burden-shifting process by which courts determine whether intentional discrimination has taken place. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As the court noted,

the first stage in this process requires Plaintiff to establish by a preponderance of the evidence a prima facie case of discrimination. *In re Estate of Latimer*, 913 S.W.2d 51, 55 (Mo.App.1995).

If the plaintiff carries this burden, the employer must articulate some legitimate, nondiscriminatory reason for its conduct. *Id.* Should the employer do this, plaintiff must then show by a preponderance of the evidence that the employer's articulated reasons are pretextual. *Id.*

Plaintiff claims the reason articulated by Defendant was insufficient because it was not "nondiscriminatory" in that it invoked his disability, which is presumably the factor that may not be considered. As noted under Point I above, however, an employer accused of handicap discrimination may justify its action on the basis of the disability as long as it establishes the disability is job related.

It is true that this case is different from those in which an employer defends his action with a justification unrelated to the handicap or disability. *Cf., In re Estate of Latimer*, 913 S.W.2d at 54(employer attributed lay-off and non-recall to work slowdown). In a case such as this, the standard burden-shifting approach, which is normally used to establish intentional discrimination when only circumstantial evidence is available, may be modified. *See Doe v. New York University*, 666 F.2d 761, 776 (2d Cir.1981)(construing and applying the Rehabilitation Act of 1973 (29 U.S.C. § 794)); *Norcross v. Sneed*, 755 F.2d 113 (8th Cir.1985)(citing *Doe* with approval).[1]

The pivotal issue is not whether the handicap was considered but whether under all of the circumstances it provides a reasonable basis for finding the plaintiff not to be qualified. *Doe*, 666 F.2d at 776.

The plaintiff makes out a prima facie case by showing that he is a handicapped person under the act and that although he is qualified apart from his handicap, he was denied employment because of his handicap. *See Doe*, 666 F.2d at 776–77; *U.S. E.E.O.C. v.*

---

1. Decisions under the MHRA are guided not only by Missouri law but also by federal employment discrimination decisions which "are applicable and authoritative under the MHRA." *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir. 1994).

*Williams Electronics Games, Inc.*, 930 F.Supp. 1209, 1212–13 (N.D.Ill.1996). Employer may rebut the inference that the handicap was improperly taken into account by going forward with evidence that the handicap is relevant to qualifications for the position sought. *Id.* The plaintiff must then bear the ultimate burden of showing by a preponderance of evidence that in spite of the handicap he is qualified. *Id.*

■ Although the trial court invoked the standard burden-shifting process set forth in *McDonnell Douglas*, *Doe's* version of that process may be applicable here. Under either *McDonnell Douglas* or *Doe*, Defendant carried its burden of rebutting the inference of unlawful employment action. The trial court's imposition of the ultimate burden of showing by a preponderance of evidence that Defendant committed an act of intentional discrimination prohibited by law was not error. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir.1995) (burden of persuasion with respect to intentional discrimination remains with plaintiff at all times); *Ruby v. Springfield R–12 Public School Dist.*, 76 F.3d 909, 912 (8th Cir.1996) (plaintiff has burden of proving that defendant discriminated against him illegally). Point three is denied.

#### Point IV.

Plaintiff's fourth and final point takes issue with the trial court's finding that if Plaintiff returned to work, he risked a "greater than fifty percent" chance of re-injury. Plaintiff argues that because the finding was erroneous, the trial court had no basis for concluding Plaintiff's disability was "job related" or posed a threat of "demonstrable serious harm" to his safety.

Plaintiff claims the error resulted from the trial court's misinterpretation of the following testimony of Dr. Estep, the physician practicing occupational medicine, who testified:

Q. Doctor, is it still your opinion as you stated before that in 1991 December given just the operative procedures as you have described them this gentleman should not have been doing the work at Atlas?

A. That is correct.

. . . .

Q. Doctor, that's based solely upon the fact that you believe that there's some unquantified level of concern that injury might occur to Mr. Snyder, is that correct? Or, himself or his co-workers?

A. Yes.

. . . .

Q. . . . . Not asking for percentages [regarding risk of injury], doctor, but just some description?

A. When I mention that there is concern about someone having future injury or injury to co-workers then that means that that concern—there's a higher than normal risk involved. Any type of factory work, any type of work in the work place has some risk—repetitive motion injury or some sort of injury. When somebody has a concern about an elevated risk then that means that that person is at a higher risk if the—if you're at a 50% of an injury. And someone had a concern about an elevated risk that would be— yes, it could be 51%, but for me to have that concern would mean that it would be significantly more than 50% and as far as putting a number on it I can't do that.

. . . .

Q. Sir, are you saying—I want to make sure I hear you right. Are you testifying as a licensed doctor under oath with reasonable medical certainty that Mr. Snyder, if he went back to work there, would have more than a 50% chance—

A. No, sir, I never said that.

. . . .

Q. What did you say, doctor?

A. I said that he would have more than what is normal to expect for that injury for that type of job.

Q. And is that the standard of occupational medicine for recommending hire or non-hire for specific jobs?

A. Yes.

Plaintiff appears to be correct in asserting the doctor was unwilling to testify to a greater than 50% chance of injury. It is clear and Plaintiff does not deny, however, that the

doctor believed under the applicable medical standard Plaintiff should not return to his job at the factory. There was other evidence, and the trial court made additional, uncontested findings that support the conclusion there was a threat to the safety of Plaintiff or his co-workers.

Plaintiff does not refer to any precedent for the proposition that a threat of "demonstrable serious harm" to safety must be more than 50% risk of injury. *See Doe*, 666 F.2d at 777 (holding that a less–than–50% risk may be significant and sufficient to disqualify). It is not necessary to decide here whether this or any other percentage satisfies the requirement of "demonstrable serious harm." There was substantial evidence to support the judgment that Plaintiff was not entitled to relief. Point four is denied.

The trial court was justified in ruling Plaintiff did not carry his burden of showing by a preponderance of evidence that Defendant engaged in employment discrimination prohibited under the law. The judgment was supported by substantial evidence, was not against the weight of evidence and did not wrongly state or apply the law.

The judgment is affirmed.

BARNEY, P.J., and GARRISON, J., concur.